IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CT-03119-M

| | | |
|---|---|---|
| BARWON FARMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| SERGEANT KEVIN GORE, | ) | |
| | ) | |
| Defendant. | ) | |

This cause is before the court on defendant's motions to seal documents, Mot. [D.E. 36], and for summary judgment, Mot. [D.E. 29]. As discussed below, the court grants these motions.

Relevant Procedural History:

On April 4, 2022, Barwon Farmer ("plaintiff"), a state inmate proceeding without prepayment of fees, see [D.E. 2, 6], filed *pro se* an unverified complaint under 42 U.S.C. § 1983, see Compl. [D.E. 1] (alleging that Tabor C.I. Sergeant Kevin Gore ("defendant") violated plaintiff's Eighth Amendment rights on October 5, 2021, and seeking, *inter alia*, money damages)

On October 5, 2022, the court allowed the action to proceed. See Order [D.E. 11].

On September 5, 2023, defendant moved for summary judgment, Mot. [D.E. 29], and filed a memorandum [D.E. 30], a statement of facts [D.E. 31], an appendix [D.E. 32], a proposed sealed document [D.E. 33], and a motion to seal [D.E. 34]. Defendant later filed a corrected motion to seal. Mot. [D.E. 36] at 1–3 (noting proposed sealed exhibits include plaintiff's medical records).

Plaintiff did not object and, because the interest in preserving confidentiality of the records outweighs the public interest in disclosure, the court GRANTS this motion to seal [D.E. 36].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 35], but he failed to respond and the time to do so has passed.

Statement of Facts:

"On October 5, 2021, at approximately 0019 hours, Plaintiff intentionally flooded his cell 'because he did not want to be on lock up,' and therefore, was transferred to a holding cell in the B-Pod on lower Red Unit." Def.'s Stmt. Mat. Facts [D.E. 31] at ¶4.[1]

"While in the holding cell . . . at approximately 0110 hours, Plaintiff 'manipulated the [hand]cuffs,' '[laid] flat on [his] back and kick[ed] the plexiglass lo[o]se.'" Id. at ¶5. "Plaintiff then 'grabbed the plexiglass and attempted to break it.'" Id. at ¶6. "Plaintiff ignored Sgt. Gore's direct order to stop pulling on the plexiglass." Id. at ¶7. "Sgt. Gore observed Plaintiff's behavior" and "administered two, one-half second bursts of OC Pepper Spray to the facial area of Plaintiff to prevent him from breaking the plexiglass because it could then be used as a weapon." Id. at ¶¶8–9.

"At approximately 0118-0120 hours, Plaintiff was escorted from the Red Unit holding cell to the decontamination shower, to medical and then to his cell in the lower B pod." Id. at ¶10.

"At approximately, 0140 hours, Plaintiff was evaluated by medical for the use of OC Pepper Spray. Staff noted redness to the upper chest, back, neck, face and eyes; no areas of bruising or swelling, and skin intact." Id. at ¶11.

---

[1] Because plaintiff has not submitted an opposing statement of facts, defendant's undisputed statement of facts is deemed admitted for the purposes of the instant motion for summary judgment. See Fed. R. Civ. P. 56(e)(2); E.D.N.C. Local Civ. R. 56.1(a)(2); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir 2017) (per curiam) (unpublished); United States v. Compassionate Home Care Servs., Inc., No. 7:14-CV-113-D, 2017 WL 1030706, at *1 n.1 (E.D.N.C. May 15, 2017) (unpublished). Defendant's statement cites the underlying evidence, and the court has reviewed that evidence.

"After reviewing the incident, [the North Carolina Department of Adult Corrections ("DAC")] determined that policy and procedure had been followed and no excessive force was used." Id. at ¶12. "Plaintiff received a disciplinary action as a result of this incident." Id.

Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Discussion:

As an initial matter, plaintiff has not offered affidavits or declarations in opposition to defendant's instant motion for summary judgment despite receiving adequate notice under Roseboro, 528 F.2d at 310, and having an opportunity to do so, see Celotex, 477 U.S. at 324; cf. Pledger v. Lynch, 5 F.4th 511, 525–27 (4th Cir. 2021). Instead, plaintiff merely relies upon the

3

allegations in his unverified complaint. Cf. Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021); see Fed. R. Civ. P. 56(e).

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The first prong requires that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (quotation and emphasis omitted). The second prong requires a showing that "the officials acted with a sufficiently culpable state of mind." Id. (quotation and emphasis omitted); see Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.").

An Eighth Amendment excessive force claim requires a showing that "the officials act[ed] with a sufficiently culpable state of mind," and that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quotations and alteration omitted). "The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quotations omitted). "[T]he 'state of mind required is wantonness in the infliction of pain.'" Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (citation omitted). Factors for whether an officer acted wantonly include: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used';

(3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986) ("Whitley")).

The court presumes, without deciding, that plaintiff's alleged injuries satisfy the objective component of an excessive force claim. See id. at 238 (noting even a "minor" injury can be actionable if it "rises above the level of [*de minimis*] harm"). Nevertheless, applying the Whitley factors, defendant's use of force was not excessive.

As to the first Whitley factor – "the need for the application of force" – the DAC Use of Force Policy and Procedure states, in relevant part: "The use of force shall be permissible only to the extent reasonably necessary for a proper correctional objective," but "[t]his prohibition shall not be construed to mean that staff must suffer an assault upon their person before taking appropriate action." Def.'s App., Ex. 1(f), [D.E. 32-7] at 2 (DAC Use of Force Policy and Procedure, Chapter F, § .1503(a)). This policy also states: "Reasonable force is authorized in order to . . . ensure compliance with a lawful order or to protect property." Id. at 3 (§ .1503(b)). This policy further states, in relevant part: "pepper spray, if feasible, should be used as the first level of response: (1) to control or deter violent, threatening or aggressive acting offenders"; and that "Pepper spray is to be sprayed directly in the eyes." Id. at 4–5 (§ .1504 (b)).

Here, plaintiff kicked loose plexiglass in the holding cell and disobeyed defendant's direct order to stop pulling on the plexiglass. Def.'s Stmt. Mat. Facts [D.E. 31] at ¶¶5–7. Defendant then deployed two brief bursts of pepper spray to prevent plaintiff from breaking the plexiglass which could then be used as a weapon. Id. at ¶¶8–9. The record evidence, including an incident report and contemporaneous holding cell photographs showing loose and bent plexiglass, supports

5

defendants' statement of facts. See Def.'s App., Ex. 1(c), [D.E. 32-4] at 1–9. Aside from his own bald say-so, there is no support for plaintiff's claims that he had already ceased his actions and that defendant did not give any verbal order before deploying pepper spray. See Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (noting "neither '[u]nsupported speculation,' nor evidence that is 'merely colorable' or 'not significantly probative,' will suffice to defeat a motion for summary judgment" (internal citations omitted)). Accordingly, the court finds the first Whitley factor favors defendant.

The court now turns to the second Whitley factor – "the relationship between the need and the amount of force that was used." The record does not support an inference that the use of force was greater than necessary to achieve the penological objective of restoring order because, as noted above, plaintiff kicked loose and was pulling on the plexiglass when defendant deployed pepper spray. The court declines plaintiff's invitation to second-guess defendant's pepper spray use in this "rapidly evolving," potentially dangerous situation. See Graham v. Connor, 490 U.S. 386, 396–97 (1989) (explaining that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation," and that courts must consider such circumstances when determining whether a constitutional violation occurred); Whitley, 475 U.S. at 321 ("When the ever-present potential for violent confrontation and conflagration, . . . ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators . . . carries a special weight." (internal quotations and citations omitted)); Brooks, 924 F.3d at 113 ("[A] manifest and immediate need for the protective use of force gives rise to a powerful logical inference that officers in fact used force for just that reason.");

6

see also Crayton v. Adams, No. 7:13–cv–00078, 2013 WL 5918508, at *1 (W.D. Va. Nov. 1, 2013) ("Federal courts are poorly equipped to second guess the split second security decisions of prison officials."). Thus, the second Whitley factor also favors defendant.

The court turns to the third Whitley factor – "the extent of any reasonably perceived threat that the application of force was intended to quell." Defendant states that broken plexiglass could be used as a weapon, see Def.'s Stmt. Mat. Facts [D.E. 31] at ¶9, and courts have noted the same, see, e.g., Leonard v. Tony, No. 23-10244, 2023 WL 6142188, at *5 (11th Cir. Sept. 20, 2023); Tyler v. Sapper, No. 5:21-CT-03002-M, 2023 WL 8603004, at *8 (E.D.N.C. Dec. 12, 2023); Stone v. Rickard, No. CV 1:16-10763, 2017 WL 9939206, at *4 (S.D.W. Va. Aug. 28, 2017), report and recommendation adopted, No. 1:16-CV-10763, 2018 WL 3637360 (S.D.W. Va. July 31, 2018). Because the record reflects that defendant reasonably perceived the possibility of plaintiff breaking plexiglass was a threat to institutional safety, the third Whitley factor also favors defendant.

The court now turns to the fourth Whitley factor – "any efforts made to temper the severity of a forceful response." Here, plaintiff states that he administered two, one-half second bursts of pepper spray to plaintiff's face. See Def.'s Stmt. Mat. Facts [D.E. 31] at ¶9. As noted above, the DAC regulations contemplate pepper spray to the eyes as the first level of response when an inmate is engaged in threatening or dangerous behavior. See Def.'s App., Ex. 1(f), [D.E. 32-7] at 4–5 (DAC Use of Force Policy and Procedure, Chapter F, § .1504 (b)). As also noted above, nothing, aside from plaintiff's own bald say-so, supports an inference that he ceased manipulating the plexiglass before defendant deployed pepper spray. See Bouchat, 346 F.3d at 522; cf. Brooks, 924 F.3d at 114 (holding there was a genuine dispute of material fact where an officer used pepper spray on a plaintiff who was laying on the ground and no longer resisting). Thus, the fourth

7

Whitley factor also favors defendant. See Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

The record also reflects that plaintiff received a medical evaluation circa 1:40 a.m. on October 5, 2021, which noted relatively mild symptoms pursuant to this pepper spray exposure approximately thirty minutes prior. See [D.E. 33] at 290–92 (Oct. 5, 2021, clinical encounter and Use of Force Evaluation noting, *inter alia*: plaintiff's subjective complaint of "burning sensation to eyes and upper body and face from pepper spray"; observing, on exam, that plaintiff had showered, he had redness to his upper chest, back, neck, and face, and his eyes were red and tearing, but that his respiration was "even and unlabored," and there was no coughing, "no noted swelling to facial area," and "no areas of bruising"; assessing "comfort, impaired due to pepper spray"; as disposition, "follow-up at sick call as needed"; as "other," "treated per non-urgent nursing protocol for Pepper Spray"; and, as "patient education topics," plaintiff was assured that "pain will end soon and he will stop hurting," and he was "instructed to rinse with water burning areas" and to make a "routine appointment if eyes continued to be red after a day"). Thus, although it is not a dispositive factor, plaintiff's lack of significant injury likewise weighs in favor of a finding that defendant's use of force was not excessive. See Wilkins, 559 U.S. at 37 ("[T]he extent of injury suffered by the inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." (citations omitted)).

After viewing the evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, see Scott, 550 U.S. at 378, defendant has met his burden of showing the absence of evidence to support plaintiff's excessive force claim, see Celotex, 477 U.S. at 325, whereas plaintiff merely relies upon the bald allegations in his unverified complaint, see Anderson, 477 U.S. at 248, and otherwise fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted).

Thus, defendant is entitled to summary judgment on this excessive force claim. Anderson, 477 U.S. at 249; Whitley, 475 U.S. at 322 ("Unless it appears that the evidence viewed in the light most favorable to plaintiff will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury."); see Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion").

To the extent plaintiff instead alleges that defendant failed to provide needed medical treatment, "deliberate indifference" to a prisoner's "serious medical needs" violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); see Iko, 535 F.3d at 241; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective.").

A prison official, however, is not liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; see Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)

(finding defendant must have "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the defendant's] action or inaction."); Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (requiring prison official knew of and disregarded an "objectively serious condition, medical need, or risk of harm"). Beyond actual knowledge, the official "must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate." Iko, 535 F.3d at 241 (quotation marks and citation omitted); see Grayson, 195 F.3d at 695 ("Deliberate indifference is a very high standard–a showing of mere negligence will not meet it.").

Here, plaintiff was decontaminated and medically evaluated approximately ten and thirty minutes after pepper spray was deployed, respectively. See Def.'s App., Ex. 1(c), [D.E. 32-4] at 1–9; [D.E. 33] at 288–89 (Oct. 5, 2021, clinical encounter and Restrictive Housing Screening).

Here, the objective findings on examination noted plaintiff's red and teary eyes, and redness on his upper chest, back, neck, and face, but did not observe coughing, labored breathing, swelling, or bruising. See [D.E. 33] at 290–92 (Oct. 5, 2021, clinical encounter and Use of Force Evaluation). Considering this brief delay and the lack of aggravating factors, plaintiff fails to satisfy the objective prong of a deliberate indifference claim. Moskos v. Hardee, 24 F.4th 289, 298 (4th Cir. 2022) (noting plaintiff "experienced the usual transitory effects of pepper spray for a period of, at most, 90 to 120 minutes," and finding, "[i]n circumstances such as these, involving a short delay in decontamination, without any aggravating factors such as a serious medical reaction, courts have consistently found that the objective prong [of an Eighth Amendment claim] is not satisfied" (collecting cases)); see Iko, 535 F.3d at 241; Strickler, 989 F.2d at 1379.

Thus, after viewing the evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, see Scott, 550 U.S. at 378, defendant again has met his burden of

10

showing the absence of evidence to support plaintiff's deliberate indifference claim, see Celotex, 477 U.S. at 325, whereas plaintiff merely relies upon the allegations in his unverified complaint, see Anderson, 477 U.S. at 248, and fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted). Accordingly, defendant also is entitled to summary judgment on this deliberate indifference claim. See Anderson, 477 U.S. at 249.

Alternatively, because he is a government official, defendant is entitled to qualified immunity from civil damages so long as his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, defendant is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (alterations and quotations omitted).

A reasonable official in defendant's position would not have recognized that his actions violated plaintiff's clearly established rights. See id. at 743 ("When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" (citation omitted)); Malley v. Briggs, 475 U.S. 335, 341 (1986) ("The *Harlow* standard is specifically designed to . . . permit the resolution of many insubstantial claims on summary judgment . . . .'"). Accordingly, defendant likewise is entitled to a finding of qualified immunity.

11

Conclusion:

For the reasons discussed above, the court: GRANTS defendant's motion to seal documents [D.E. 36]; GRANTS defendant's motion for summary judgment [D.E. 29]; and DIRECTS the clerk to close the case.

SO ORDERED this 4th day of May, 2024.

*Richard E. Myers II*
RICHARD E. MYERS II
Chief United States District Judge